UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
COURTNEY BURNS

|  |  |
|---|---|
| Plaintiff, | **Complaint** |
| -against- | Jury Trial Demanded |

CITY OF NEW YORK, SGT. CARLOS DELEON,
LT. KEVIN MALONEY, C.O. NILDA HOFFMAN,
SGT. ANNETTE FIGUEROA, and LT. "JOHN" RAMATUR
In their Individual and Professional Capacities;

Defendants.

--------------------------------------------------------------------------------X

Plaintiff COURTNEY BURNS, by and through her attorneys, Avallone & Bellistri, LLP, as and for her Complaint against Defendants', respectfully sets forth and alleges the following:

## INTRODUCTION

1.      This is an action for equitable relief and money damages on behalf of the Plaintiff, COURTNEY BURNS (hereinafter referred to as "Plaintiff") who was, and who is prospectively being, deprived of her civil and state constitutional rights as a result of the Defendants' acts of discrimination based upon her gender and in retaliation for engaging in protected activity. In addition, Plaintiff has been subjected to sexual harassment and a hostile work environment created, condoned and tolerated by Defendants. Finally, Plaintiff was assaulted and battered by a supervising officer. Said assault, in violation of Plaintiff's civil rights, was never prosecuted nor remedied.  Rather, Plaintiff was retaliated against for complaining of the assault and further victimized by the NYPD's policy of failing to investigate and remedy the violation of civil rights by supervising officers.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1965, 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of, and to redress deprivation of, rights secured by the First Amendment freedom of speech and by the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution and provisions against sex discrimination and retaliation in employment based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983, 42 U.S.C. § 1985, along with applicable provisions of the New York State Constitution, New York State Executive Law and New York City Human Rights Law.

    a.  Title VII of the Civil Rights Act of 1964 (hereinafter referred to as "Title VII") providing for injunctive and other relief against discrimination in employment on the basis of race, color, and gender;

    b.  the Civil Rights Act of 1866, 42 U.S.C. § 1981, providing for the protection of all person's right to make and enforce contracts under the color of state law; and

    c.  the Civil Rights Act of 1871, 42 U.S.C. § 1983, providing for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

3.      Defendants' unlawful employment practices, violations of Plaintiff's civil rights and tortuous acts complained of herein were committed within the Southern District of New York.

4.      The pendent jurisdiction of the federal district court is invoked with respect to the Plaintiff's claims under New York State Executive Law § 296 and New York City Administrative Code § 8-101, pursuant to 28 U.S.C. § 1367, because the entire action before the court comprises one constitutional and civil rights case, and the claims arise out of the same common nucleus of

facts and are such that the Plaintiff would ordinarily be expected to try them in one judicial proceeding. Additionally, the pendent jurisdiction of the Federal District Court is invoked with respect to Plaintiff's claims under the New York State Law which protects against unlawful assault and battery.

## PLAINTIFF

5.      Plaintiff is a female citizen of the United States of America and is over twenty-one (21) years of age, a resident of Westchester County, New York, and was an employee of Defendant CITY OF NEW YORK (hereinafter referred to as the "CITY") more specifically the Police Department of the City of New York (hereinafter referred to as the "NYPD") at the 52nd Precinct. For the purposes of this litigation, Defendant CITY may be identified interchangeably using CITY or NYPD to identify Plaintiff's employer.

## DEFENDANTS

6.      Defendant CITY was and is a municipal corporation organized and existing under and by virtue of the laws of the State of New York, and at all relevant times was Plaintiff's employer, with its central offices in the County of New York, and diverse other offices and facilities throughout the State of New York.

7.      Defendant CITY is an employer within the definitions contained in 42 U.S.C. § 2000(e), employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

8.      Defendant SGT. CARLOS DELEON, at all relevant times and places, was Plaintiff's supervisor at the 52nd Precinct.  He is being sued in his individual and professional capacities.

9.      Defendant LT. KEVIN MALONEY, at all relevant times and places, was Plaintiff's supervisor at the 52nd Precinct.  He is being sued in his individual and professional

capacities.

10.     Defendant SGT. ANNETTE FIGUEROA, at all relevant times and places, was Plaintiff's supervisor at the 52nd Precinct.  She is being sued in her individual and professional capacities.

11.     Defendant C.O. NILDA HOFFMAN, at all relevant times and places, was Plaintiff's supervisor at the 52nd Precinct.  She is being sued in her individual and professional capacities.

12.     Defendant LT. "JOHN" RAMATUR, at all relevant times and places, was Plaintiff's supervisor at the 52nd Precinct.  He is being sued in his individual and professional capacities.


## PROCEDURAL REQUIREMENTS

13.     Plaintiff has filed suit with this Court within the applicable statute of limitations period.

14.     Plaintiff is not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1866, the Civil Rights Act of 1871 or the United States Constitution.

15.     On or about September 22, 2010, Plaintiff sought assistance from the United States Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC").

16.     On or about February 14, 2011, Plaintiff received a Dismissal and Notice of Right to Sue from the United States Department of Justice.


## BACKGROUND

17.     Plaintiff was employed as a New York City Police Officer from January 9, 2013 until she was forced to resign and constructively discharged on or about October 18, 2015.

18.     During the relevant time-period, all parties were assigned to the 52nd Precinct in the County of The Bronx.

19.     Throughout Plaintiff's employment with the NYPD, Plaintiff has always had exemplary performance evaluations.  Plaintiff has never been disciplined in this or any other employment.

20.     Beginning in the summer of 2014, Defendant SGT. DELEON would constantly mouth, "I love you" and randomly rub Plaintiff's face and thigh while at the 52nd Precinct. Plaintiff would always tell him to stop.

21.     Defendant SGT. DELEON would constantly ask Plaintiff out on dates. Plaintiff would always reject Defendant SGT. DELEON's advances and requests to go out on a date.

22.     Between June 2014 and August 2014, Defendant SGT. DELEON would pull Plaintiff behind the desk at the 52nd Precinct and tell her that everyone at the precinct hates her, causing Plaintiff to cry.

23.     In December 2014, in retaliation for Plaintiff's numerous refusals to go out on a date with Defendant SGT. DELEON, he made Plaintiff rush the processing of an arrest because it was snowing and he didn't want Plaintiff to stay inside the precinct while it was snowing. As such, he ordered Plaintiff to take the marijuana that was not vouchered yet and was considered evidence from Plaintiff's "collar" and put it in her pocket and voucher it at the end of Plaintiff's tour and threatened not to give Plaintiff overtime if she did not process the arrest fast enough so she could go back into the snow.

24.     On or about January 2015, Defendant SGT. DELEON asked Plaintiff if she liked "getting eaten out."  Plaintiff was disgusted with Defendant SGT. DELEON and would

not respond.

25.    In February 2015, while at a police precinct Christmas Party, Defendant SGT. DELEON inappropriately touched Plaintiff and kissed her on her mouth without Plaintiff's consent. This was witnessed by other supervisors, Defendants LT. MALONEY, SGT. SGT. FIGUEROA, and other police officers that were in the immediate vicinity.

26.    Plaintiff began to yell and scream at Defendant SGT. DELEON causing Defendants LT. MALONEY and SGT. SGT. FIGUEROA to come over and try to calm Plaintiff down and to defuse the situation. Plaintiff complained to her supervisors, Defendants MALONEY and FIGUEROA, about what Defendant SGT. DELEON had just done – kiss her on the mouth without her consent in full view of all the officers.

27.    Upon her return to work, Plaintiff immediately began to be picked on and made fun of by other police officers who learned of the inappropriate conduct of Defendant SGT. DELEON.

28.    Shortly thereafter, Plaintiff began to be harassed in retaliation for complaining about Defendant SGT. DELEON by the Defendants and began to experience a hostile work environment. This harassment and hostile work environment continued up to the time of her resignation in October 2015.

29.    Plaintiff was removed from her police patrol vehicle (RMP) and placed on foot post for lengthy periods of time between February 2015 to March 2015 and again from July 2015 until Plaintiff's constructive discharge in October 2015 as part of the retaliation.

30.    In February of 2015, after the Christmas party, Plaintiff along with her partner, P.O. Kayan Dawkins, complained to Defendant SGT. FIGUEROA, who was their immediate supervisor and who Plaintiff drove around, regarding what Defendant SGT. DELEON had done and was doing to Plaintiff.

31.    Defendant SGT. FIGUEROA said that she would talk to Defendant SGT. DELEON and try to keep it "in house" regarding the Christmas party incident or else Plaintiff would be labeled a "rat" and be subjected to retaliation from other supervisors within the command.

32.    In March 2015, Defendant SGT. FIGUEROA asked Plaintiff that if Plaintiff ever sued SGT. DELEON for all the things he's done to her, would she split the money she received with Defendant SGT. DELEON.

33.    As such, Defendant SGT. FIGUEROA and Defendant LT. MALONEY never reported Plaintiff's and P.O. Dawkins' complaints of the incident to OEEO as they were required to do per the Patrol Guide.

34.    Defendant SGT. DELEON's nickname within the 52nd Precinct was "Shrek."

35.    Soon after the Christmas party sexual assault by Defendant SGT. DELEON, photos of Plaintiff and the animated character "Shrek" and photos of Plaintiff and the green mucus cartoon character from the Mucinex medication commercials began to be posted throughout the 52nd Precinct.

36.    Plaintiff was also called "Mrs. Deleon" by other Officers in the precinct. This continued up to the time of Plaintiff's resignation.

37.    In March 2015, Defendant SGT. DELEON continued to harass and retaliate against Plaintiff by blowing kisses at her and making faces at her while he was standing behind Defendant SGT. FIGUEROA at the front desk of the 52nd Pct. This was witnesses by P.O. Roman and the Desk Sgt. who was on duty at the time.

38.    In April 2015, Defendant SGT. DELEON asked Plaintiff if he approved her request for a day off on May 2, 2015 (a Form 28), would Plaintiff go out with him one night.

39.    In April 2015, Plaintiff was assigned to be Defendant SGT. DELEON's

driver. Plaintiff was told by Defendant SGT. DELEON to go to a secluded spot on Loring Place to eat. While eating, Defendant SGT. DELEON began to ask Plaintiff personal questions about her relationship with her boyfriend. Defendant SGT. DELEON told Plaintiff that she should "try new things" and asked Plaintiff again if she would go out on a date with him. Plaintiff was embarrassed and humiliated.

40.    On May 16th and 17th, 2015, Plaintiff was reassigned away from her police partner and placed on a highway alone, despite the fact that an interim order was issued from Headquarters stating that every police officer must have a partner as a result of the police shootings in the City.

41.    On May 16, 2015, Defendant SGT. DELEON refused to allow Plaintiff to sign out and threatened Plaintiff by saying that there was a lot that he could do to her in retaliation for an her complaints and an anonymous complaint being filed against Defendant SGT. DELEON by another police officer, Ramon Columna, regarding the sexual harassment against Plaintiff by Defendant SGT. DELEON.

42.    Between May 2015 and June 2015, the practice within the 52nd Precinct was that police officers could not be on a fixed foot post back to back days. Plaintiff was the only officer ordered to be on the fixed post at a specific corner with no breaks for 12 hours or more with only a meal break. When Plaintiff went to use the bathroom, Defendant SGT. DELEON would tell Plaintiff that she could not be off the post and order Plaintiff back to the post before being able to use the bathroom. This was done in retaliation for filing complaints against Defendant SGT. DELEON.

43.    Defendant SGT. DELEON would order Plaintiff while on the fixed post to remain in the rain to eat while her partner would be allowed to go into the Police van to eat in full view.

44.     On May 17, 2015, Defendant SGT. DELEON attempted to issue Plaintiff a Command Discipline for insubordination. The Administrative Lieutenant, Defendant LT. RAMATUR intervened and refused to allow Defendant SGT. DELEON to issue the Command Discipline because he knew about the sexual harassment by Defendant SGT. DELEON and the complaints filed against him.

45.     After the anonymous complaint was filed by another police officer against Defendant SGT. DELEON, Defendant LT. RAMATUR asked Plaintiff to go for a drive with him to discuss what was happening in the precinct between her and Defendant SGT. DELEON.  Plaintiff told him that if she was to tell him everything that was happening to her at the hands of Defendant SGT. DELEON, he would be forced to file a complaint with OEEO and IAB, at which point Defendant LT. RAMATUR did not want to hear Plaintiff's side and they returned to the precinct.

46.     In June 2015, Plaintiff was told by Defendant SGT. DELEON, "Maybe a change of scenery would get you to write summons" and Defendant SGT. DELEON assigned Plaintiff on a different fixed post then what Plaintiff was normally assigned to.

47.     In June 2015, Defendant SGT. DELEON would not allow Plaintiff to make arrests while she was on the fixed post while other officers on the post would be permitted to make arrests. Defendant SGT. DELEON would subsequently yell at Plaintiff for having lower activity then the other officers and blame the punishment of being on a fixed post and no police vehicle on Plaintiff's numbers.

48.     Plaintiff was removed from a police vehicle and placed on a fixed post, which is considered a punishment within the NYPD, from July 2015 to October 2015 when she was constructively discharged and forced to retire.

49.     In September 2015, Defendant SGT. DELEON followed Plaintiff into the

women's bathroom at the 52nd Precinct, closed the door behind him and said to Plaintiff, "Come on just give me one kiss."

50.     Defendant SGT. DELEON would text Plaintiff on several occasions before work, asking Plaintiff to "hangout."

51.     Defendant SGT. DELEON would drop a pen in front of Plaintiff and then ask her to bend over and pick it up.

52.     In September 2015, Plaintiff's uncle, who she was very closed to, passed away and Plaintiff called out sick. Plaintiff was initially told that she could have the days off by two of her supervisors, but later found out that Defendant C.O. HOFFMAN would not approve it.

53.     On the day of the funeral, Defendant C.O. HOFFMAN called the precinct looking for Plaintiff to make sure Plaintiff came to work rather than attend the funeral. Plaintiff was not in because she was initially approved the day off by the desk sergeant. When Defendant C.O. HOFFMAN found out, Plaintiff was ordered to come to work by a sergeant as per Defendant C.O. HOFFMAN's orders, in retaliation for filing complaints against Defendant SGT. DELEON.  As a result, Plaintiff went to work.

54.     Plaintiff was denied overtime pay for working past her tour by Defendant SGT. DELEON.

55.     Plaintiff was not "chronic sick," yet the NYPD sent a Sergeant to her house to check on her to make sure she was home. This is not done to any officer unless they are considered "chronic sick."

56.     In October 2015, as further retaliation, Plaintiff was told that she was going to be sent for psychiatric evaluation based on the fact that she took 3 days off after the passing of her uncle.

57.     On or about October 15, 2015, Plaintiff informed the NYPD that she was not going to continue to be punished and retaliated for complaining about the sexual harassment and a hostile work environment, so she was forced to resign.

58.     After Plaintiff's constructive discharge, she learned that the NYPD began to speak with certain members of the 52nd Pct. regarding her complaints.

59.     Plaintiff tried to deal with this inappropriate conduct by expressing her objections directly to Defendants and/or trying to ignore Defendant SGT. DELEON to no avail. Plaintiff was aware of rumors that were circulating within the precinct regarding her and Defendant SGT. DELEON. This caused Plaintiff tremendous anxiety, embarrassment and humiliation.

60.     Defendant C.O. HOFFMAN, as Commanding Officer of the 52nd Precinct, never transferred Defendant SGT. DELEON so that Plaintiff would not have to see and deal with him as a result of his sexual harassment and assault.  A transfer is required to take place in all sexual harassment and assault incidents within the NYPD. As such, Plaintiff was subjected to further retaliation and hostile work environment.

61.     As per the provisions of the NYPD patrol guide, Defendants LT. MALONEY, LT. RAMATUR, C.O. HOFFMAN, and SGT. FIGUEROA were under a duty to report Plaintiffs' complaints of sexual harassment, hostile work environment, and retaliation to the NYPD Office of Equal Employment. By failing to do so, these individuals condoned and tolerated the actions of Defendant SGT. DELEON.

62.     Plaintiff alleges that Defendants' refusal to file a complaint report are acts of retaliation for making her complaints against Defendant SGT. DELEON to them, and are part of a custom and policy of the NYPD to ignore complaints by subordinates against their supervisors for violation of their civil rights.

63.     Upon information and belief, Plaintiff alleges that individuals who were similarly situated to Plaintiff were not placed on fixed post, ordered to come to work instead of attend a funeral, have a sergeant come to their home to check on them while not on chronic sick, refused bathroom breaks, denied overtime, asked to go out on post by themselves, eat in the rain, threatened with discipline, and ordered to go to psych services for evaluation without any apparent issues.

64.     Upon information and belief, Defendants knew or should have known that Defendant SGT. DELEON had a history of engaging in sexual harassment and retaliatory conduct against Plaintiff, and therefore failed to protect Plaintiff. Further, the NYPD has a long-standing policy of not investigating or prosecuting assaults by supervisors on subordinates.

65.     Defendant SGT. DELEON was never charged with engaging in a "verbal and physical altercation with Plaintiff" and "inappropriate physical contact."   Notwithstanding the aforementioned facts, Defendant SGT. DELEON remains a Sergeant with the NYPD.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I

### GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

66.     Plaintiff re-alleges paragraphs 1 through 46 and incorporates them by reference as paragraphs 1 through 65 of Count I of this Complaint.

67.     Plaintiff alleges that defendants through its agents engaged in a pattern and practice of discrimination against her with respect to the terms, conditions and privileges of employment because of the plaintiff's gender in violation of 42 U.S.C. § 2000e-2.

68.     As part of its pattern and practice of employment discrimination, defendants

through its agents treated plaintiff in a manner indicative of gender discrimination.

69.     Defendants knew or should have known about the gender discrimination in the workplace.

70.     Defendants failed and refused to take appropriate action to end the discriminatory treatment and conditions which plaintiff was subjected to, which was clearly motivated by gender in a clear demonstration of bad faith.

71.     That as a result of the discriminatory acts of defendants through its agents, plaintiff suffered emotional distress.

72      As a result of the acts of defendants under color of law, Plaintiff suffered emotional distress, humiliation and embarrassment legal and related expenses.

73.     Plaintiff has been damaged in the amount of $3,000,000.00

## COUNT II

### SEXUAL HARASSMENT IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

74.     Plaintiff re-alleges paragraphs 1 through 73 and incorporates them by reference as paragraphs 1 through 73 of Count I of this Complaint.

75.     Plaintiff alleges that defendants through its agents engaged in a pattern and practice of sexual harassment against her with respect to the terms, conditions and privileges of employment because of the Plaintiff's gender in violation of 42 U.S.C. § 2000e-2.

76.     As part of its pattern and practice of employment discrimination, defendants through its agents subjected Plaintiff to sexual harassment and failed to take corrective action.

77.     Defendants knew or should have known about the sexual harassment in the workplace.

78.     Defendants failed and refused to take appropriate action to end the sexual

harassment to which Plaintiff was subjected to, which was clearly motivated by gender in a clear demonstration of bad faith.

79.     That as a result of the discriminatory acts of defendants through its agents, plaintiff suffered emotional distress.

80.     As a result of the acts of defendants under color of law, Plaintiff suffered emotional distress, humiliation and embarrassment legal and related expenses.

81.     Plaintiff has been damaged in the amount of $3,000,000.00

## COUNT III

### RETALIATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

82.     Plaintiff re-alleges paragraphs 1 through 81 and incorporates them by reference as paragraphs 1 through 81 of Count I of this Complaint.

83.     Plaintiff alleges that defendants through its agents engaged in retaliation against plaintiff as a result of her complaining about the discriminatory treatment in violation of 42 U.S.C. §2000e-3(a).

84.     That as a result of the discriminatory acts of defendants through its agents, plaintiff suffered emotional distress.

85.     As a result of the acts of defendants under color of law, plaintiff suffered emotional distress, humiliation and embarrassment legal and related expenses.

86.     Plaintiff has been damaged in the amount of $3,000,000.00

## COUNT IV

### HOSTILE WORK ENVIRONMENT IN VIOLATION
### OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

87.        Plaintiff re-alleges paragraphs 1 through 86 and incorporates them by reference as paragraphs 1 through 86 of Count I of this Complaint.

88.        Plaintiff alleges that defendants through its agents created and condoned a hostile work environment against plaintiff in violation of 42 U.S.C. §2000e-3(a).

89.        That as a result of the discriminatory acts of defendants through its agents, plaintiff suffered emotional distress.

90.        As a result of the acts of defendants under color of law, plaintiff suffered emotional distress, humiliation and embarrassment legal and related expenses.

91.        Plaintiff has been damaged in the amount of $3,000,000.00

## COUNT V

### GENDER DISCRIMINATION IN VIOLATION OF
### 42 U.S.C. §1983

92.        Plaintiff re-alleges paragraphs 1 through 92 and incorporates them by reference as paragraphs 1 through 92 of Count I of this Complaint.

93.        Plaintiff alleges that defendants through its agents engaged in a pattern and practice of discrimination against her with respect to the terms, conditions and privileges of employment because of the plaintiff's gender in violation of 42 U.S.C. 1983.

94.        As part of its pattern and practice of employment discrimination, defendants through its agents treated plaintiff in a manner indicative of gender discrimination, with respect to its failure to take corrective action.

95.        Defendants knew or should have known about the gender discrimination in the

workplace.

96      Defendants failed and refused to take appropriate action to end the discriminatory treatment and conditions which plaintiff was subjected to, which was clearly motivated by gender in a clear demonstration of bad faith.

97.      That as a result of the discriminatory acts of defendants through its agents, plaintiff suffered emotional distress.

98.      As a result of the acts of defendants under color of law, plaintiff suffered emotional distress, humiliation and embarrassment legal and related expenses.

99.      Plaintiff has been damaged in the amount of $3,000,000.00

## COUNT VI

### SEXUAL HARASSMENT IN VIOLATION OF
### 42 U.S.C. §1983 AS AGAINST ALL INDIVIDUAL DEFENDANTS

100.      Plaintiff re-alleges paragraphs 1 through 99 and incorporates them by reference as paragraphs 1 through 99 of Count I of this Complaint.

101.      Plaintiff alleges that all individual defendants through its agents engaged in a pattern and practice of sexual harassment because of the plaintiff's gender in violation of 42 U.S.C. 1983.

102.      As part of its pattern and practice of employment discrimination, all individual defendants through its agents treated plaintiff in a manner indicative of sexual harassment, with respect to its failure to take corrective action.

103.      All individual Defendants knew or should have known about the sexual harassment in the workplace.

104.      All individual Defendants failed and refused to take appropriate action to end the sexual harassment to which plaintiff was subjected, which was clearly motivated by gender

in a clear demonstration of bad faith.

105.     That as a result of the discriminatory acts of all individual defendants through its agents, plaintiff suffered emotional distress.

106.     As a result of the acts of all individual defendants under color of law, Plaintiff suffered emotional distress, humiliation and embarrassment legal and related expenses.

107.     Plaintiff has been damaged in the amount of $3,000,000.00.


## COUNT VII

## RETALIATION IN VIOLATION OF 42 U.S.C. §1983

108.     Plaintiff re-alleges paragraphs 1 through 107 and incorporates them by reference as paragraphs 1 through 107 of Count I of this Complaint.

109.     Plaintiff alleges that defendants through its agents engaged in retaliation against plaintiff as a result of her complaining about the discriminatory treatment in violation of 42 U.S.C. 1983.

110.     That as a result of the discriminatory acts of defendants through its agents, plaintiff suffered emotional distress.

111.     As a result of the acts of defendants under color of law, plaintiff suffered emotional distress, humiliation and embarrassment legal and related expenses.

112.     Plaintiff has been damaged in the amount of $3,000,000.00


## COUNT VIII

## HOSTILE WORK ENVIRONMENT IN VIOLATION
## OF 42 U.S.C. §1983

113.     Plaintiff re-alleges paragraphs 1 through 112 and incorporates them by

reference as paragraphs 1 through 112 of Count I of this Complaint.

114.     Plaintiff alleges that defendants through its agents created and condoned a hostile work environment against plaintiff in violation of 42 U.S.C. 1983.

115.     That as a result of the discriminatory acts of defendants through its agents, Plaintiff suffered emotional distress.

116.     As a result of the acts of defendants under color of law, Plaintiff suffered emotional distress, humiliation and embarrassment legal and related expenses.

117.     Plaintiff has been damaged in the amount of $3,000,000.00

## COUNT IX

### ABUSE OF AUTHORITY
### IN VIOLATION OF 42 U.S.C. §1983

118.     Plaintiff re-alleges paragraphs 1 through 117 and incorporates them by reference as paragraphs 1 through 117 of Count I of this Complaint.

119.     Plaintiff alleges that defendants through its agents abused their authority in discriminating against plaintiff and unfairly disciplining plaintiff in violation of 42 U.S.C. 1983.

120.     That as a result of the defendants' abuse of authority plaintiff suffered emotional distress.

121.     As a result of the acts of defendants under color of law, plaintiff suffered emotional distress, humiliation and embarrassment legal and related expenses.

122.     Plaintiff has been damaged in the amount of $3,000,000.00

## COUNT X

### DENIAL OF EQUAL PROTECTION
### UNDER 42 USC §1983 AGAINST ALL INDIVIDUAL DEFENDANTS

123.     Plaintiff re-alleges paragraphs 1 through 122 and incorporates them by reference as paragraphs 1 through 122 of Count I of this Complaint.

123.     The individual Defendants have embarked on a course of conduct that deprived Plaintiff of her rights under the United States Constitution, federal and state law.

124.     The facts and circumstances cited above with reference to the Constitution and other civil rights violations suffered by Plaintiff are examples of Defendants' violations of Plaintiff's civil rights.

125.     The actions of Defendants, acting under color of state and local law, custom and usage, have deprived Plaintiff of her rights, privileges and immunities under the laws and Constitution of the United States, and in particular, of her rights to equal protection under the 14th Amendment.

126.     By these actions, Defendants have jointly and separately deprived Plaintiff of her rights under the 14th Amendment to the United States Constitution, in violation of 42 USC §1983.

127.     As a result of the acts of defendants under color of law, plaintiff suffered emotional distress, humiliation and embarrassment legal and related expenses.

128.     Plaintiff has been damaged in the amount of $3,000,000.00

## COUNT XI

### GENDER DISCRIMINATION
### IN VIOLATION OF
### NEW YORK STATE EXECUTIVE LAW § 290 et seq.

129.     Plaintiff re-alleges Paragraphs 1 through 128 and incorporates them by reference as Paragraphs 1 through 128 of Count I of this Complaint.

130.      New York State Executive Law § 290 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of gender.

131.      Based upon the foregoing, Defendants' discriminated against the Plaintiff based upon her gender.

132.      As a direct and proximate result of the unlawful employment practices of Defendants' Plaintiff has suffered the indignity of gender discrimination and great humiliation, loss of career opportunity, income and related benefits, emotional distress.

133.     Plaintiff has been damaged in the amount of $3,000,000.00

## COUNT XII

### SEXUAL HARRASSMENT
### IN VIOLATION OF
### NEW YORK STATE EXECUTIVE LAW § 290 et seq.

134.      Plaintiff re-alleges Paragraphs 1 through 133 and incorporates them by reference as Paragraphs 1 through 108 of Count I of this Complaint.

135.      New York State Executive Law § 290 et seq., makes it unlawful to sexually harass any individual in the terms, conditions, or privileges of employment.

136.      Based upon the foregoing, Defendants' tolerated and condoned the sexually harassment of plaintiff.

137.      As a direct and proximate result of the unlawful employment practices of

Defendants' Plaintiff has suffered the indignity of sexual orientation discrimination and great humiliation, loss of career opportunity, income and related benefits, emotional distress.

138.    Plaintiff has been damaged in the amount of $3,000,000.00

## COUNT XIII

### RETALIATION IN VIOLATION OF
### NEW YORK STATE EXECUTIVE LAW § 290 et seq.

139.    Plaintiff re-alleges Paragraphs 1 through 138 and incorporates them by reference as Paragraphs 1 through 138 of Count I of this Complaint.

140.    New York State Executive Law § 290 et seq., makes it unlawful to retaliate e against any individual in the terms, conditions, or privileges of employment for engaging in protected activity, i.e. for complaining about discrimination.

141.    Based upon the foregoing, Defendants' unlawfully retaliated against Plaintiff for complaining about the unlawful employment practices to which she has been subjected.

142.    As a direct and proximate result of the unlawful employment practices of Defendants' Plaintiff has suffered the indignity of retaliation and great humiliation loss of career opportunity, income and related benefits, emotional distress.

143.    Plaintiff has been damaged in the amount of $3,000,000.00

## COUNT XIV

### HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF
### NEW YORK STATE EXECUTIVE LAW § 290 et sq.

144.    Plaintiff re-alleges Paragraphs 1 through 143 and incorporates them by reference as Paragraphs 1 through 143 of Count I of this Complaint.

145.    New York State Executive Law § 290 et seq., makes it unlawful to

discriminate against any individual in the terms, conditions, or privileges of employment on the basis of gender.  The law also makes it unlawful to create a severe and hostile environment where retaliation is encouraged, tolerated and condoned.

146.      As a direct and proximate result of the unlawful employment practices of Defendants' Plaintiff has suffered the indignity of a hostile work environment and great humiliation loss of career opportunity, income and related benefits, emotional distress.

147.      As a further and proximate result of these unlawful employment practices, Plaintiff has suffered emotional distress, mental anguish, severe disruption of her personal life and her professional life, and loss of enjoyment in the ordinary pleasures of life.

148.      Plaintiff has been damaged in the amount of $3,000,000.00

## COUNT XV

### GENDER DISCRIMINATION IN VIOLATION OF
### NEW YORK CITY ADMINISTRATIVE CODE §8-101 et seq.

149.      Plaintiff re-alleges Paragraphs 1 through 148 and incorporates them by reference as Paragraphs 1 through 148 of Count I of this Complaint.

150.      The New York City Administrative Code §8-101 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of gender.

151.      Based upon the foregoing, Defendants' discriminated against the Plaintiff based upon her gender.

152.      As a direct and proximate result of the unlawful employment practices of Defendants' Plaintiff has suffered the indignity of gender discrimination and great humiliation, loss of career opportunity, income and related benefits, emotional distress.

153.      Plaintiff has been damaged in the amount of $3,000,000.00

## COUNT XVI

## SEXUAL HARRASSMENT
## IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE §8-101 et seq.

154.     Plaintiff re-alleges Paragraphs 1 through 153 and incorporates them by reference as Paragraphs 1 through 153 of Count I of this Complaint.

155.     New York City Administrative Code §8-10 et seq., makes it unlawful to sexually harass any individual in the terms, conditions, or privileges of employment.

156.     Based upon the foregoing, Defendants' sexually harassed plaintiff.

157.     As a direct and proximate result of the unlawful employment practices of Defendants' Plaintiff has suffered the indignity of sexual harassment and great humiliation, loss of career opportunity, income and related benefits, emotional distress.

158.     Plaintiff has been damaged in the amount of $3,000,000.00

## COUNT XVII

## RETALIATION
## IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE §8-101 et seq.

159.     Plaintiff re-alleges Paragraphs 1 through 158 and incorporates them by reference as Paragraphs 1 through 158 of Count I of this Complaint.

160.     New York City Administrative Code §8-10 et seq., makes it unlawful to retaliate against any individual based upon complaints concerning the terms, conditions, or privileges of employment on the basis of sexual orientation, gender and race.

161.     Based upon the foregoing, Defendants' retaliated against the Plaintiff based upon her engagement in protected activity, in that plaintiff complained about the discriminatory

treatment.

162.     As a direct and proximate result of the unlawful employment practices of Defendants' Plaintiff has suffered the indignity of sexual harassment, gender discrimination, hostile work environment and great humiliation, loss of career opportunity, income and related benefits, emotional distress.

163.     Plaintiff has been damaged in the amount of $3,000,000.00

**COUNT XVIII**

**HOSTILE WORK ENVIRONMENT
IN VIOLATION OF
NEW YORK CITY ADMINISTRATIVE CODE §8-101 et seq.**

164.     Plaintiff re-alleges Paragraphs 1 through 163 and incorporates them by reference as Paragraphs 1 through 163 of Count I of this Complaint.

165     New York State Executive Law § 290 et seq., makes it unlawful to create and/or condone a hostile working environment.

166.     Based upon the foregoing, Defendants' created, tolerated and condoned a hostile working environment.

167.     As a direct and proximate result of the unlawful employment practices of Defendants' Plaintiff has suffered the indignity of a hostile working environment and great humiliation, loss of career opportunity, income and related benefits, emotional distress.

## **PRAYER FOR RELIEF**

**Wherefore,** Plaintiff demands compensatory and punitive damages from these Defendants jointly and severally, in an amount to be determined at trial, plus any and all available statutory remedies, both legal and equitable, and interests and costs.

Dated:          Lake Success, New York
                 January 7, 2017

                                    Yours etc,
                                    Avallone & Bellistri, LLP


                                    ROCCO G. AVALLONE
                                    Attorneys for Plaintiff
                                    3000 Marcus Ave, Suite 3E7
                                    Lake Success, New York 11042
                                    (516) 986-2500

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Courtney Burns**<br>**50 Yonkers Terrace**<br>**Yonkers, NY 10704** | From: | **Boston Area Office**<br>**John F. Kennedy Fed Bldg**<br>**Government Ctr, Room 475**<br>**Boston, MA 02203** |
|---|---|---|---|

|  | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2016-01695** | **Edward J. Ostolski,**<br>**Investigator** | **(617) 565-3214** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

**Feng K. An,**
**Area Office Director**

OCT 2 4 2016

*(Date Mailed)*

Enclosures(s)

cc:
| Eileen Flaherty, Esq.<br>Legal Bureau<br>NEW YORK CITY POLICE DEPARTMENT<br>1 Police Plaza<br>Room 1406<br>New York, NY 10038 | Rocco G. Avallone<br>AVALLONE AND BELLISTRI<br>3000 Marcus Avenue,<br>Suite 3E07<br>Lake Success, NY 11042 |
|---|---|